■ FREDERICK J. MANCHESKI et al., Respondents, v GABELLI GROUP CAPITAL PARTNERS, Respondent-Appellant. BLOOMBERG NEWS, Intervenor-Appellant. [835 NYS2d 595]—

In an action, inter alia, for dissolution of the defendant, the intervenor, Bloomberg News, appeals from so much of an order of the Supreme Court, Westchester County (Jamieson, J.), entered May 12, 2006, as, in effect, denied those branches of its motion which were to unseal certain documents submitted in camera on the defendant's motion for summary judgment, and

granted the cross application of the defendant to seal certain documents, and the defendant cross-appeals from so much of the same order as granted that branch of the motion of Bloomberg News which was for leave to intervene in the action.

Ordered that the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.

The defendant Gabelli Group Capital Partners (hereinafter GGCP) is a New York corporation. In November 2003 the plaintiffs, minority shareholders in GGCP, commenced this action for dissolution of GGCP or, in the alternative, for a judgment declaring that their GGCP stock is unrestricted and freely transferable. The gravamen of the complaint was that Mario Gabelli, GGCP's majority shareholder and chief executive officer, breached his fiduciary duties by, inter alia, looting GGCP's assets to the detriment of the minority shareholders. The parties entered into a confidentiality stipulation and agreed that any documents, or portions thereof, deemed confidential would be kept in confidence. The stipulation was "so ordered" by the Supreme Court.

The plaintiffs moved for summary judgment on their second cause of action for a declaration that their shares of GGCP were transferable without GGCP's consent. The motion was submitted in camera. The court granted the plaintiffs' motion "after extensive review of the voluminous submissions."

On April 10, 2006 Bloomberg News moved for leave to intervene in the action for the limited purpose of unsealing and immediately obtaining public access to the summary judgment motion papers which had been submitted in camera. Bloomberg News argued that there was a strong presumption of openness for judicial records, and that GGCP failed to provide a basis to seal any of the documents at issue. In opposition, GGCP contended that Bloomberg News could not intervene because it was not a legally cognizable entity, and that in any event, it failed to meet the requirements for intervention. GGCP further contended that certain, but not all, of the documents submitted in support of and opposition to the summary judgment motion should be sealed because they contained information that was proprietary in nature or was nonpublic financial information of third parties.

The court granted that branch of Bloomberg News' motion which was for leave to intervene in the action, and after an independent review of each document at issue, concluded that certain documents would be sealed which contained information in the nature of "recent non-public financial information" of GGCP, and "confidential financial information concerning third-

parties." However, the court refused to seal certain exhibits that were already "made public," or contained information "historical in nature" that "would not compromise GGCP's current business strategies," or was simply "potentially embarrassing" to GGCP. The court directed the parties to file redacted motion papers in accordance with its order.

Contrary to GGCP's contention, it was a provident exercise of discretion to permit Bloomberg News to intervene in the action for the limited purpose of challenging the sealing of the summary judgment motion papers. Bloomberg News' failure to plead its legal status was a technical irregularity that can be disregarded (see CPLR 2001; Matter of Etkin & Co. [Play It Again Apparel], 235 AD2d 264, 264 [1997]; Matter of Stephentown Concerned Citizens v Herrick, 223 AD2d 862, 864 n2 [1996]; Matter of WNYT-TV v Moynihan, 97 AD2d 555, 556 [1983]; see also Arbor Hill Concerned Citizens Neighborhood Assn. v City of Albany, N.Y., 250 F Supp 2d 48, 62 [2003]). Nor was Bloomberg News required to meet the formal requirements for intervention under CPLR 1012 or 1013, since, prior to issuance of an order to seal judicial documents, the court is obligated, where possible, to afford news media an opportunity to be heard (see Matter of Herald Co. v Weisenberg, 59 NY2d 378, 383 [1983]; Coopersmith v Gold, 156 Misc 2d 594, 599-600 [1992]). Accordingly, Bloomberg News was properly permitted to intervene.

Under the First Amendment to the United States Constitution, the press is generally entitled to access to court proceedings (see Globe Newspaper Co. v Superior Court, County of Norfolk, 457 US 596, 605-606 [1982]; Matter of Herald Co. v Weisenberg, supra at 383). There is a presumption that the public has the right of access to the courts to ensure the actual and perceived fairness of the judicial system, as the "the bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury, and fraud" (Republic of Philippines v Westinghouse Elec. Corp., 949 F2d 653, 660 [1991]; see Danco Labs. v Chemical Works of Gedeon Richter, 274 AD2d 1, 7 [2000]; see also Press-Enterprise Co. v Superior Court of Cal., Riverside Cty., 464 US 501, 508 [1984]). To this end, in 1991, a rule, 22 NYCRR 216.1 (a), was promulgated by the Chief Administrative Judge of the Courts in response to a concern that, where the parties were in agreement that court records should be sealed, the public interest in accessing those documents was properly considered and weighed by the court (see Matter of Twentieth Century Fox Film Corp., 190 AD2d 483, 485-486 [1993]). The rule provides that:

"(a) Except where otherwise provided by statute or rule, a court shall not enter an order in any action or proceeding sealing the court records, whether in whole or in part, except upon a written finding of good cause, which shall specify the grounds thereof. In determining whether good cause has been shown, the court shall consider the interests of the public as well as the parties. Where it appears necessary or desirable, the court may prescribe appropriate notice and opportunity to be heard.

"(b) For purposes of this rule, court records' shall include all documents and records of any nature filed with the clerk in connection with the action. Documents obtained through disclosure and not filed with the clerk shall remain subject to protective orders as set forth in CPLR 3103 (a)" (22 NYCRR 216.1 [a]).

Since confidentiality is the exception, the court must make an independent determination of whether to seal court records in whole or in part for "good cause" (*Matter of Hofmann,* 284 AD2d 92, 93-94 [2001]). This task involves weighing the interests of the public against the interests of the parties (*see Danco Labs. v Chemical Works of Gedeon Richter, supra*). The party seeking to seal documents must demonstrate compelling circumstances (*see Coopersmith v Gold,* 156 Misc 2d 594, 606 [1992]). A finding of "good cause" presupposes that public access to the documents at issue will likely result in harm to a compelling interest of the movant (*cf. Press-Enterprise Co. v Superior Court of Cal., supra* at 510), and that no alternative to sealing can adequately protect the threatened interest (*see Application of The Herald Co.,* 734 F2d 93, 100 [1984]). However, since there is no absolute definition, good cause, in essence, "boils down to . . . the prudent exercise of the court's discretion" (*Coopersmith v Gold, supra* at 606*),* and thus a case-by-case analysis is warranted (*see Matter of Twentieth Century Fox Film Corp., supra*).

Here, the Supreme Court made an independent review and specific factual findings for each document at issue. Notably, the court determined that only certain documents would be sealed (*cf. Danco Labs. v Chemical Works of Gedeon Richter, supra* at 7-8 [conclusory sealing of entire record is improper]). There was a compelling interest in sealing the third-party financial information since disclosure could impinge on the privacy rights of third parties who clearly are not litigants herein (*cf. Weinstein v Barnett,* NYLJ, Mar. 24, 1995, at 29, col 2). There was also a compelling interest in sealing the documents containing GGCP's proprietary financial information because disclosure could harm the private corporation's competitive standing (*cf. Matter of Crain Communications v Hughes,* 135 AD2d 351, 351 [1987];

*Matter of Winston,* NYLJ, Dec. 30, 1991, at 31, col 5; *Griffin v Scudder, Stevens & Clark,* NYLJ, June 28, 1991, at 22, col 3). Proprietary information, in the nature of current or future business strategies which are closely guarded by a private corporation, is akin to a trade secret, which, if disclosed, would give a competitor an unearned advantage (*see Griffin v Scudder, Stevens & Clark, supra*). Indeed, the Supreme Court struck a balance by refusing to seal documents containing GGCP financial information that could not compromise its current business strategies, i.e., information historical in nature. Crane, J.P., Krausman, Fisher and Dickerson, JJ., concur.